UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN FLORES, *on behalf of the Class and Class Members*<br><br>Plaintiff,<br><br>v.<br><br>POINT PICKUP TECHNOLOGIES, INC.,<br><br>Defendant. | Case: 1:22-cv-00193-JLT-SKO<br><br>ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO REPLY BRIEF AND HOLDING IN ABEYANCE DEFENDANT'S MOTION TO COMPEL ARBITRATION PENDING A BENCH TRIAL.<br><br>(Docs. 9, 16.) |

Jean Flores brings this class action lawsuit alleging various California labor law violations against Point Pickup Technologies, Inc.,[1] arising out of her working relationship with Point Pickup as a "Pickup Partner."  Pending is Defendant's Motion to Compel Arbitration, where Point Pickup moves to compel Plaintiff to individual arbitration, dismiss the class allegations in Plaintiff's Complaint, and stay this case pending the completion of the arbitration.  (Doc. 9.)  The parties dispute whether they entered into Point Pickup's Arbitration Agreement, and if so, whether the Arbitration Agreement is unconscionable.  Additionally, Plaintiff has launched several procedural and evidentiary objections to Defendant's Reply exhibits.  (Doc. 12.)

The Court finds the matter suitable for decision without oral argument pursuant to Local

---

[1] On April 20, 2022, Plaintiff voluntarily dismissed Defendant Point Pickup Enterprises, Inc. without prejudice in this action pursuant to Federal Rule of Civil Procedure 41(a)(1).  (Docs. 13, 14.)

1

Rule 230(g).  For the reasons set forth below, Plaintiff's Objections to Defendant's Reply Evidence (Doc. 12) are **OVERRULED** and Defendant's Motion to Compel Arbitration (Doc. 9) is **HELD IN ABEYANCE**.

## I.     Factual and Procedural Background

Point Pickup is an online, mobile delivery service, with a network of approximately 250,000 Delivery Providers nationwide.  (Doc. 1 at ¶ 14.)  According to Point Pickup, it is "a technology platform," which provides delivery services for items customers order online from "brick and mortar" retailers. (Doc. 9 at 9.)  Since approximately August 2020, Plaintiff has worked as a delivery provider—known as a "Pickup Partner"—for Point Pickup in Sanger and Dinuba, California.  (Doc. 1 at ¶ 6.)  In this role, "Plaintiff's duties include, without limitations, picking up delivery orders from [Point Pickup's] business partners and delivering those orders to [ ] patrons."  (*Id.* at ¶ 15.)

As a Pickup Partner, Plaintiff receives "a piece rate for each delivery."  (*Id.* at ¶ 21.)  Throughout her tenure, Plaintiff alleges that:  she "works approximately ninety-eight (98) or more hours per week," (*id.* at ¶ 15); Point Pickup does not remit customer gratuities to the Pickup Partner (*id.* at ¶¶ 29, 30); she is denied "rest and recovery periods" and "performs work not incidental to the piece rate" (*id.* at ¶¶ 32, 39); she is denied minimum wage, overtime, and double time (*id.* at ¶ 33); she is not afforded a "compliant meal period[]"(*id.* at ¶¶ 35–38) and does not receive premium payments for missed, interrupted, or untimely meal and rest periods.  (*Id.* at ¶ 44.)

Plaintiff filed the instant action on behalf of herself and a class of Pickup Partners. She alleges thirteen California labor law, tort, and contract theories of liability. (*Id.* at 13–33.)  The crux of Plaintiff's Complaint centers on Point Pickup "misclassifying Plaintiff and Class Members as independent contractors instead of employees[.]" (*Id.* at ¶ 2; *see also id.* at ¶¶ 25 (alleging misclassification as independent contractors), 27, 35, 39, 52(a), (g), 60, 151, 158.)

## II.     Legal Standard

Under the plain language of the FAA, in response to a motion to compel arbitration, the district court must apply the summary judgment standard outlined in Federal Rule of Civil

2

1  Procedure 56.  *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).  "The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate."  *Hansen*, 1 F.4th at 670 (internal quotation marks and citation omitted).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.* "An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Airlines for Am. v. City and Cnty. of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023) (internal quotation marks and citation omitted). Thus, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). Once the movant satisfies its initial burden, the burden then shifts to the non-movant to establish that a genuine issue as to any material fact does exist.  *Id.* (citation omitted).  "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**III.    Discussion**

Central to the parties' briefs is whether Plaintiff signed—electronically or otherwise—Point Pickup's MDRA.  (*See* Docs. 9, 12, 15.)  Before the Court addresses this question, and the merits of Defendant's motion, the Court first turns to threshold procedural and evidentiary objections raised by both parties.

**A.    Threshold Issues**

In Defendant's Motion to Compel, it argues that "the MDRA is an enforceable agreement to arbitrate Plaintiff's claims," it "is a valid agreement to arbitrate," and that the parties agreed to arbitrate these issues before a neutral arbitrator. (Doc. 9 at 12–15 (emphases omitted).  Plaintiff's Opposition rests on its contention that Point Pickup "did not present Plaintiff with an arbitration agreement to review or sign," and that she never consented to the arbitration agreement.  (Doc. 12 at 7–16.)

Defendant contends that Plaintiff's did in fact electronically agree to the MDRA. (Doc. 15 at 6.)[2] Dauvin Peterson, the Chief Analytics Officer for Point Pickup, affirms that to activate her Point Pickup account and become a Pickup Partner, the cell phone application required her to sign the MDRA. (*See* Ex. 1, Doc. 15-1 at ¶ 5 ("Before the Pickup Partner can activate an account and access delivery orders, the Pickup Partner is presented with and must agree to [Point Pickup's] Terms & Conditions of use and its Privacy Policy."); *id.* at ¶ 6 ("The Pickup Partner must scroll through and agree to each [request] in order to proceed."), ¶ 7 ("[T]he Pickup Partner is presented with a complete copy of the Delivery Provider Agreement ('DPA') for consideration," which includes the terms of Point Pickup's End User License Agreement), ¶ 24 ("The MDRA was presented to all California Pickup Partners through the Driver App."), ¶ 29 ("Flores applied her electronic consent to the MDRA by tapping 'Agree' on June 5, 2021.").)

Plaintiff filed Objections and Motion to Strike and Amended Objections. (Doc. 16; Doc. 17 at 2 n.1.) Defendant argues that Plaintiff's objection violated Local Rule 230(m)(1) because she continued to argue the merits of her Opposition in her Objections, essentially converting her Objections into an improper sur-reply. (Doc. 18 at 2–3.)

### 1. Defendant's Response to Plaintiff's Objections (Doc. 18)

Plaintiff objects to Defendant's Reply on two grounds[3]: (1) that Defendant's Reply introduces "new evidence, facts, and different arguments" that were not included in its Motion to Compel, and therefore these arguments are waived because Plaintiff lacked an opportunity to respond; and (2) Defendant's Supplemental Declaration violates the Best Evidence Rule, as "[t]his evidence is being introduced in place of the Arbitration Agreement itself." (Doc. 16 at 2–5.)

Though Plaintiff argues about Defendant's burden of proof in seeking to compel arbitration, these arguments are tangential to Plaintiff's primary objections. Indeed, Defendant's response to the Objections contains arguments relating to the parties' respective burdens. (*See* Doc. 18 at 3.) The Court is unconvinced that Plaintiff's Objections amount to an improper sur-

---

[2] The parties also dispute the unconscionability of the arbitration agreement. These arguments, however, are not central to the threshold procedural issues raised by the parties, and the Court need not address them here.
[3] Plaintiff's Amended Objections withdrew her timeliness objection.

4

reply. Considered holistically, Plaintiff's Objections do "not include further argument on the motion." E.D. Cal. L.R. 230(m)(1). Thus, to this extent, Defendant's objection is **OVERRULED**.

### 2. Plaintiff's Objections

#### a. *Best Evidence Objection*

At this stage, courts do not "focus on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (citations omitted). Therefore, evidentiary objections are limited to when "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[O]bjections based on a failure to comply with the technicalities of authentication requirements *or the best evidence rule* are inappropriate." *Pierre v. IEC Corp.*, No. 8:22-cv-01280-FWS-JDE, 2023 WL 3551962, at *4 n.1 (C.D. Cal. Mar. 14, 2023) (citation omitted) (emphasis added) (motion to compel arbitration context); *Alkutkar v. Bumble Inc.*, No. 22-CV-0422-PJH, 2022 WL 16973253, at *3 (N.D. Cal. Nov. 16, 2022) (same). Accordingly, the objection is **OVERRULED**.

#### b. *Motion to Strike & Waiver*

Though Plaintiff has correctly recited the rule regarding waiver when a party fails to raise an argument until the reply brief, waiver does not occur when the evidence presented in the reply is not new. Evidence is not new when it "addresse[s] the same set of facts supplied in [the plainitff's] opposition to the motion but provides the full context to [the plaintiff's] selected recitation of facts." *Terrell v. Contra Costa Cnty.*, 232 F. App'x 626, 629 n.2 (9th Cir. 2007); *see also Applied Materials, Inc. v. Demaray LLC*, No. 5:20-cv-05676-EJD, 2020 WL 8515132, at *1 (N.D. Cal. Dec. 16, 2020) ("[E]vidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief."); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1205 n.31 (C.D. Cal. 2007) ("Evidence is not 'new,' however, if it is submitted in direct response to proof adduced in opposition to a motion.") (citing *Terrell*, 232 F. App'x at 629 n.2). The same principle applies to arguments made in a movant's reply brief that merely respond to an opposition brief. *See All Star Reed v. Nationwide Agribusiness Ins. Co.*, No. 12CV146 L

(BLM), 2014 WL 1286561, at *15 (S.D. Cal. Mar. 31, 2014) ("[A]rguments not made in a[] moving brief but made in response to matters that were raised in the opposition to the motion are appropriately considered.") (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048–49 (9th Cir. 2003)). Indeed, when a non-movant has launched objections to a reply brief's "new" evidence, these objections have, in effect, satisfied the fairness requirement to allow the non-movant to respond. *See id.* ("With its objections to the evidence and the present motion, defendant has amply argued its position concerning the 'new evidence' and therefore, there is no need for a sur-reply.").

      Defendant's initial Motion to Compel argued that "[t]o become a Pickup Partner, Plaintiff downloaded the [Point Pickup] Driver App, activated a secure account, . . . and accepted several agreements, including a Delivery Provider Agreement ('DPA'), and a Non-Disclosure and Dispute Resolution Agreement that applies to deliveries requested by Walmart customers ('NDDRA')." (Doc. 9 at 9.) Defendant's motion represents that "[t]he Driver App first presented the MDRA to Plaintiff on May 20, 2021," prompting her "to scroll through, review the MDRA and indicate Plaintiff's assent to its terms by tapping 'Agree' upon reaching the final screen of the agreement[.]" (*Id.* at 10 (citing Decl. of Dauvin Peterson, Ex. 1, Doc. 9-1 at ¶ 15).) Then, Defendant represented that "[a]ccording to [Point Pickup's] records, Plaintiff scrolled through and accepted the MDRA on June 5, 2021." (*Id.* (citing Peterson Decl., Ex. 1, Doc. 9-1 at ¶ 15).)

      Peterson's original Declaration and his Supplemental Declaration state nearly identical facts: that to become a Pickup Partner, applicants must scroll through the entire agreement, and that according to Defendant's records, Plaintiff "applied her electronic consent to the MDRA on June 5, 2021." (*Compare* Ex. 1, Doc. 9-1 at ¶¶ 6–9 (stating that application process requires Pickup Partners to scroll through and accept agreements prior to becoming a Pickup Partner) *and* ¶ 15 (stating Plaintiff consented to MDRA on June 5, 2021) *with* Peterson Supp. Decl., Ex. 1, Doc. 15 at ¶¶ 3–10 (reciting process to become Pickup Partner—notably that a Pickup Partner "must scroll through and agree to each in order to proceed.") *and* ¶ 29 (stating that according to Point Pickup's electronic records, Plaintiff "applied her electronic consent to the MDRA by tapping 'Agree' on June 5, 2021.").) Accordingly, the Supplemental Declaration is not new evidence, and the Court **OVERRULES** Plaintiff's objections.

**B. Arbitration Agreements**

The arbitration agreement in this case, details that it would be governed by the FAA with no claim that California's statutory scheme (CA Civ. Proc. § 1281, et seq.) for evaluating the enforceability of these agreements would apply. Therefore, under the FAA, "arbitration provisions. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In applying the FAA, the judiciary's role is limited in determining two questions: "'(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Winkler v. McCloskey*, 83 F.4th 720, 728 (9th Cir. 2023) (quoting *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023)).  "Although there is generally a presumption in favor of arbitration, 'the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Id.* at 728–29 (quoting *Johnson*, 57 F.4th at 680–81).  The party seeking to compel arbitration bears the burden to prove the existence and applicability of an arbitration agreement by a preponderance of the evidence.  *See id.* at 729; *Johnson*, 57 F.4th at 681 ("As the party seeking to compel arbitration, Walmart bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.") (citation omitted).

"The 'first principle' of a court's arbitration decision is that '[a]rbitration is strictly a matter of consent. . . and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.'"  *Johnson*, 57 F.4th at 681 (emphasis in original) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)).  Because arbitration is "a matter of contract," the court cannot require a party submit to arbitration on a dispute that she "has not agreed so to submit." *Id.* (internal quotation marks and citation omitted).  The court applies "general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists." *Id.* (internal quotation marks and citations omitted).  The Court applies California contract law principles to the instant dispute. *See id.*

"As for any contract to be valid, an arbitration agreement requires the mutual consent of the parties." *Rodriguez v. Superior Court*, 176 Cal. App. 4th 1461, 1468 (2009) (citation omitted); *see also OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 129 (2019) ("Arbitration contracts are

7

vigorously enforced out of respect for the parties' mutual and voluntary agreement to resolve disputes by this alternative means.") (citation omitted). "If a party can show that it did not know it was signing a contract, or that it did not enter into a contract all, both the contract and its arbitration clause are void for lack of mutual assent." *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1200 (2003) (collecting cases). Thus, "[n]o enforceable agreement exists unless the parties signing the document act voluntarily and are aware of the nature of the document and have turned their attention to its provisions or reasonably should have turned their attention to its provisions." *Rodriguez*, 176 Cal. App. 4th at 1468 (internal quotation marks and citation omitted); *see also Doe v. Massage Envy Franchising, LLC*, 87 Cal. App. 5th 23, 30–31 (2022) ("It has long been the law in California that an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.") (internal quotation marks and citation omitted). "This principle applies with particular force to provisions for arbitration." *Massage Envy*, 87 Cal. App. 5th at 31 (internal quotation marks and citation omitted). A party may indicate her assent via electronic signature. *Park v. NMSI, Inc.*, 96 Cal. App. 5th 346, 314 Cal. Rptr. 3d 306, 313 (2023); Cal. Civ. Code §§ 1633.7(a) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form."), (b) ("A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.").

### 1. Effect of State Court Order

During the briefing on this motion, Defendant notified the Court that the Superior Court in Alameda County compelled arbitration between these parties as to LWDA and PAGA claims, based on substantially similar evidence as here. (Doc. 21.) (Ex. 2, Doc. 21 at 7–15.) Though Defendants offer no argument about the significance of this decision, the Court notes that the doctrine of collateral estoppel, or issue preclusion, "precludes relitigation of an issue already litigated and determined in a previous proceeding between the same parties." *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018) (citation omitted). "A federal court applying issue preclusion must give state court judgments the preclusive effect that those judgments would enjoy under the

1  law of the state in which the judgment was rendered." *Id*. The party seeking to apply this doctrine
2  bears the burden of proving that it applies. *Id*.

3  Before the doctrine may apply, there must be a final judgment on the merits. *People v.*
4  *Strong*, 13 Cal. 5th 698, 716 (2022); *Samara v. Matar*, 5 Cal. 5th 322, 327 (2018).  A state court
5  "order granting [a party's] motion to compel arbitration is not a final adjudication on the merits"
6  because it is not appealable. *Mills v. Facility Sols. Grp., Inc.*, 84 Cal. App. 5th 1035, 1049 (2022)
7  (collecting cases). Thus, though this decision is persuasive authority, it has no preclusive effect in
8  this case.

### 2. Existence of an Arbitration Agreement

10  To become a Pickup Partner, Point Pickup assert that the applicant must download the app
11  and follow the instructions.  (Doc. 9-1 at ¶ 6.)  The app presents the applicant with the End User
12  License Agreement, the Delivery Provider Agreement, and the Non-Disclosure and Dispute
13  Resolution Agreement. *Id*. As to each of these documents, the applicant must "'[s]croll down and
14  read [them] in order to accept' the agreements presented," "indicate[] [their] assent to the terms of
15  agreements by tapping on 'Accept the [DPA],'" "by checking 'I agree with the terms and
16  conditions above'" and then "tapping 'Accept Walmart Deliveries'" at the end of the NDDRA.
17  (*Id.* at ¶¶ 6–7.) The evidence shows that Plaintiff indicated her assent to the DPA, EULA, and
18  NDDRA on August 15, 2020 at 4:11 P.M.  (*Id.* at ¶ 9.) Both the EULA and NDDRA contain
19  mandatory arbitration provisions.  (Exs. B & D, Doc. 9-1 at 29, ¶ 19, 44–48.)

20  In February 2021, Point Pickup "updated its dispute resolution process and offered to
21  California Pickup Partners a Mutual Dispute Resolution Agreement ('MDRA'), which contains
22  an arbitration agreement."  (Doc. 9-1 at ¶ 14.)  "[T]he MDRA was made available for review and
23  acceptance through the Driver App" and each Pickup Partner was "invited to scroll through and
24  read the MDRA before the Pickup Partner could tap 'Agree' after reaching the final screen of the
25  MDRA's terms."  (*Id.*)  On June 5, 2021, Point Pickup's "records indicate that Flores applied her
26  electronic consent to the MDRA."  (*Id.* at ¶ 15.)  The updated MDRA also contains a mandatory
27  arbitration provision and a waiver of class action provision.  (Ex. C, Doc. 9-1 at 37.)

28  Plaintiff counters this evidence and asserts that she "do[es] not recognize, nor [is she]

9

familiar with any of" the documents attached to Defendant's motion and states that she "did not review, consent to, agree to, or sign" the DPA, EULA, NDDRA, or MDRA. (Doc. 12-1 at ¶ 4.) Contrary to Point Pickup's evidence, Mr. Flores attests that upon signing up to become a Pickup Partner, the app required her only to "upload a profile picture, [her] email address, phone number, home address, driver's license number," and other contact information, and to submit to a background check. (*Id.* at ¶ 5.) Plaintiff states she was never required to sign, or indicate assent to, any agreement, and that upon completion of her background check, she immediately began as Pickup Partner. (*Id.* at ¶¶ 5–6.)

However, Point Pickup claims that the app "generates a unique identifier that is associated with one and only one Pickup Partner. That unique identifier is then used in the system to associate delivery records with the Pickup Partner's account." (Doc. 15-1 at ¶ 15.) Based on Point Pickup's records, the app assigned a "unique identifier number" to Plaintiff, and the records "indicate that Flores applied her electronic consent to the MDRA by tapping 'Agree' on June 5, 2021." (*Id.* at ¶¶ 18, 29.) Accordingly, Point Pickup "believe[s] that Flores applied her electronic consent to the MDRA on June 5, 2021." (*Id.* at ¶ 30.)

A federal court, when determining a motion to compel arbitration under the FAA, employs the Rule 56 standards, which determines that "the trial court must [not] . . . mak[e] credibility determinations or weigh[] the conflicting evidence."[4] *Richards v. Cnty. of San Bernardino*, 39 F.4th 562, 571 (9th Cir. 2022) (citation omitted); *Soremkun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (same); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (in summary judgment motions, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences

---

[4] The Ninth Circuit has clearly and explicitly required district courts to follow the summary judgment standard promulgated in Federal Rule of Civil Procedure 56. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022) ("'In applying this language [of the FAA], district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure.' . . . As a result, 'a court is not authorized to dispose of a motion to compel arbitration until after [material] factual disputes have been resolved.'") (quoting *Hansen v. LMG Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021)). Instead, the Court only applies "state contract law" to the "scope of agreements," not the state's procedural framework that it analyzes summary judgment motions and motions to compel arbitration. *Id.* Therefore, neither California's summary judgment standard nor its motion to compel arbitration standard may apply to the present matter.

are to be drawn in his favor").

The Court concludes that given this record, "there are genuine disputes of material fact as to whether the parties formed an arbitration agreement." *Knapke*, 38 F.4th at 831. Granting Defendant's motion requires making a credibility determination between the parties' conflicting evidence, which is not permitted. *See Anderson*, 477 U.S. at 255 (when resolving motions for summary judgment, the court may not make "[c]redibility determinations," or weigh evidence, and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").

Accordingly, the Court "hold[s] [Defendant's] motion to compel arbitration in abeyance until the factual issues have been resolved," and "proceed[s] without delay to a trial on arbitrability." *Knapke*, 38 F.4th at 831 (internal quotation marks and citation omitted); *Hansen*, 1 F.4th at 672 (same). Because Plaintiff's Opposition does not request a jury trial regarding the present arbitrability issue, *Hansen*, 1 F.4th at 670 ("The district court may decide the case in a bench trial if the party opposing arbitration does not demand a jury trial . . ."), the Court will preside over the arbitrability issue in a bench trial. (*See generally* Opp'n, Doc. 12 (no request for jury trial)); 9 U.S.C. § 4.

## CONCLUSION

Based upon the foregoing, the Court **ORDERS**:

(1) Plaintiff Jean Flores's Objections to Reply Evidence (Doc. 16) are **OVERRULED**.

(2) The Court **HOLDS IN ABEYANCE** Defendant Point Pickup Technologies, Inc.'s Motion to Compel Arbitration (Doc. 9).

///
///
///
///
///
///

11

(3) **Within 21 days**, the parties **SHALL** file a joint status report proposing dates for a bench trial to determine whether Mr. Flores assented to the arbitrate the terms at issue in this case. Counsel **SHALL** contact the Courtroom Deputy Clerk to ascertain the Court's availability.

IT IS SO ORDERED.

Dated:   **December 1, 2023**                           _____
                                                        UNITED STATES DISTRICT JUDGE